## Joseph Gaus et al. v. Mr. and Mrs. Hathaway.

1. AGENCY—*Implied Powers—Construction of the Contract.*—Conditions in a contract of agency for the sale of pianos providing that all new and second-hand instruments taken in exchange or part payment for instruments were to be regarded the same as goods consigned by the principal to his agent and credited at a fair cash value, to be determined by the principal, clearly implies an authority to exchange or trade pianos as well as to sell them.

Replevin.—Appeal from the Circuit Court of Kankakee County; the Hon. CHARLES R. STARR, Judge, presiding. Heard in this court at the December term, 1895. Opinion filed July 1, 1896.

PADDOCK & COOPER, attorneys for appellants.

H. L. RICHARDSON, attorney for appellees.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was an action of replevin, originally before a justice of the peace, by appellants against appellees, to recover the possession of a piano which the plaintiffs claimed to own.

The appellants were original owners, but appellees claimed the piano through a sale by an agent of appellants.

The issue tried before a jury, was as to whether the agent had authority to trade the piano, the contention being, he only had power to sell. There was another issue as to the value of the piano, it being contended by appellees that its value was beyond the jurisdiction of a justice of the peace.

Jas. M. Gaus was the general agent of Adam Schaaf &
Co., Chicago, who sold what is called the Schaaf piano. Jay
Robinson and W. L. Webber, under the firm name of Rob-
inson & Webber, were the agents of Adam Schaaf, to sell
pianos for the Adam Schaaf Co.

Robinson & Webber reside in Kankakee, and appellee Mrs.
Sarah A. Hathaway also resides in Kankakee, and was the
owner of an old piano which was worth $600 twenty or
twenty-five years ago, and as witness, appellee, testified, was
worth, at time of trial, $200.

The evidence shows that Webber did most of the nego-
tiating about selling one of the Schaaf pianos to appellee,
and finally delivered it to her and took her old one away.
Here the evidence is contradictory as to what the trade
was; Webber testifying that he was to sell appellee the
new piano for $225, to be paid $10 per month, until it was
paid for, and was to take in addition the appellee's old
piano for $75, and also board bill for $15, making in all
$315.

The appellee testified she made the trade even with Web-
ber, giving him an old piano for the new one, except she
was to give $15 in a board bill, which was paid.

At this point the trade as claimed by appellee looks like
an unreasonable one on the part of Webber, but the circum-
stances show that appellee wanted an Everett piano, which
she had the privilege to take instead of the Schaaf piano,
which Webber was unable to furnish and told appellee that
" rather than John Church should put an Everett in the
house, I will give you that piano and call it an even trade."
and " said twice that it was to be an even trade; that she
should have the Schaaf piano for hers. " This was testified
to by Mabel Crandall, corroborating appellee's testimony.
Then witness J. C. Conklin testified. Webber testified on
trial before justice of peace that he traded pianos with Mrs.
Hathaway and was to take her old one in exchange for the
other with board bill of $15. Other witnesses corroborated
the evidence of appellee as to the trade. The evidence was
sufficient to authorize the jury in finding verdict for appellee.

But it is insisted that even if such was the contract, that Robinson & Webber had no authority to sell pianos for anything but cash, as shown by their written contract of agency with the Adam Schaaf Co.,which is introduced in evidence.

Upon examination of the contract, we find two clauses in it which seem to authorize the taking old pianos in exchange for new ones to wit, 3, and 7, and other conditions. Clause No. 3 provides that " all new and second-hand instruments taken in exchange or part payment for instruments consigned to you by us are to be regarded the same as goods consigned to us (Robinson & Webber), to be accounted for in the same manner. "

Section 7, among other conditions, provides that " instruments that have been taken in exchange or trade, etc., were to be credited to Robinson & Webber, at fair cash value, to be determined by Schaaf & Co., all freight to be paid by the agents."

These provisions clearly imply that while the pianos were taken on sale, exchange was contemplated, and the word sale thus given a more extended meaning than it otherwise would have, without those clauses.

Robinson, one of the agents, testified, " could take anything in payment if the house was secured—could take any commission in anything."

So there was proof which we think competent, that the agents, R. & W., took pianos in exchange in other cases, showing the interpretation put on the contract by both parties.

If the agents were allowed to take pianos in exchange in part on sale of pianos, this gave them a discretion, and the principal would be bound by the action of its agents, even if that discretion were not reasonably exercised, unless parties trading with these agents could be held to knowledge that the agents were not acting in good faith toward their principals.

Section No. 4 of the contract provides that Schaaf Co. shall have " the right of instructing as to the terms on which

sales are to be made and the manner of securing deferred payments."

But the evidence fails to show that Schaaf Co. ever exercised this right, but allowed the agents to go ahead and make sales limited only by the terms of the contract and use their own discretion.

By the contract, the agents warranted and guaranteed everything; notes taken or property taken in exchange, was to be the property of Schaaf Co.

Being secured in this way, was probably the reason the agents were given a wide discretion.

There are no legal points involved further than arises from a consideration of the evidence, and as far as those are concerned and the rulings of the court thereon, we see no error, and we are of opinion the evidence justified the verdict.

We need not notice the jurisdictional question.

The judgment of the court below is therefore affirmed.